# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ALFONSO M. BLAKE,

     Plaintiff

v.

JAMES DZURENDA, et al.,

     Defendants

Case No.: 3:19-cv-00321-ART-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 59, 60

This Report and Recommendation is made to the Honorable Anne Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion for summary judgment. (ECF No. 59.) Defendants filed a response. (ECF No. 64.)  Plaintiff filed a reply. (ECF No. 66.) Also before the court is Defendants' motion for summary judgment. (ECF Nos. 60, 60-1 to 60-13, errata at ECF Nos. 62, 62-1 to 63-3.) Plaintiff filed a response. (ECF No. 65.) Defendants filed a reply. (ECF No. 67.)

This case involves Plaintiff's claim that he was denied a vegan diet consistent with his Hindu beliefs, and that he was also denied, as an alternative to a vegan diet, the prison's Common Fare Menu (CFM), a diet that aligned closer with his beliefs and was offered to Jewish and Muslim inmates. Plaintiff asserts that Defendants violated his rights under the First Amendment's Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and the Equal Protection Clause.

The court finds that Plaintiff has a sincere belief that he must maintain a vegan diet, and that Defendants substantially burdened his religious practice in denying him a vegan diet or an alternative diet that was more closely aligned with his Hindu vegan beliefs. Defendants have not

1  demonstrated that their conduct is reasonably related to a legitimate penological interest (under

2  the First Amendment's Free Exercise Clause) or that the burden furthers a compelling

3  government interest and is the least restrictive means of furthering that interest (under the

4  (RLUIPA). Finally, Plaintiff did not move for summary judgment as to his equal protection

5  claim, and Defendants did not meet their burden with respect to the equal protection claim.

6      Therefore, it is recommended that Plaintiff's motion be granted; that Defendants' motion

7  be denied; and that this matter proceed to trial on Plaintiff's equal protection claim and with

8  respect to damages for the free exercise and RLUIPA claims.

9                          **I. BACKGROUND**

10     Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

11 proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The

12 events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).

13 (*Id.*)

14     The court screened Plaintiff's complaint and allowed him to proceed with claims under

15 the First Amendment's Free Exercise Clause, RLUIPA and the Fourteenth Amendment's Equal

16 Protection Clause against defendants James Dzurenda, Richard Snyder, Timothy Filson, and Kim

17 Thomas, based on allegations that he is a practicing Hindu and requires a vegan diet.

18     Specifically, Plaintiff alleges that he is a practicing Hindu and believes in the

19 requirements concerning the consumption of food prescribed by Ahimsa, which requires him not

20 to consume animal flesh or other animal byproducts such as eggs or dairy. Plaintiff avers that

21 NDOC's (former) Director Dzurenda implemented an administrative regulation (AR) that

22 designates NDOC's "Alternative Meatless Diet" (AMD) as the appropriate diet for all Hindus.

23

However, Plaintiff claims that the AMD contains eggs, dairy, and other animal byproducts. As a result, the AMD does not meet Plaintiff's religious vegan dietary needs.

Plaintiff was not afforded a true vegan diet through the AMD. In January of 2017, Plaintiff requested, as an alternative, to participate in NDOC's CFM diet. CFM is provided to Muslim and Jewish inmates to accommodate their religious dietary needs. ESP Chaplain Marc Mallinger informed Plaintiff that Hindus are not eligible for CFM, and that Hindu inmates may receive the ADM instead. In February of 2017, Plaintiff submitted a request for accommodation of religious practices form, stating that the AMD did not meet his religious dietary requirements. Snyder denied Plaintiff's request. Plaintiff appealed this decision through NDOC's grievance process, and his grievances were denied by Filson and Thomas.

Filson was dismissed under Federal Rule of Civil Procedure 4(m) for lack of timely service. ESP's Warden William Gittere was substituted in Filson's place insofar as Filson was sued in his official capacity. (ECF Nos. 32, 34.) Current NDOC Director Charles Daniels was substituted in place of former Director Dzurenda under Federal Rule of Civil Procedure 25(d), as Dzurenda was only sued in his official capacity. (ECF Nos. 46, 47.) Snyder passed away and was dismissed without prejudice. (ECF Nos. 49, 57, 58.) Therefore, this action is proceeding against NDOC Director Daniels (official capacity only), Deputy Director of Programs Thomas (individual and official capacities), and ESP Warden Gittere (official capacity only).

Plaintiff moves for summary judgment, and argues that denying him a vegan diet and limiting the CFM to Jewish and Muslim prisoners violates Plaintiff's rights under the First Amendment and RLUIPA. He does not move for summary judgment on the equal protection claim.

1    Defendants also move for summary judgment, arguing: (1) they did not personally

2  participate in the alleged constitutional violations because Thomas and Gittere only responded to

3  Plaintiff's grievance, and Director Dzurenda only implemented regulations and policies that were

4  in compliance with the Constitution;[1] (2) Plaintiff was able to freely practice his religion and his

5  religious exercise was not substantially burdened because he sought an alternative diet that

6  would have been more harmful to his religious beliefs; (3) Plaintiff cannot prove any other

7  inmate with Hindu beliefs was treated differently than he was; and (4) Defendants are entitled to

8  qualified immunity.

9                                   **II. LEGAL STANDARD**

10    The legal standard governing this motion is well settled: a party is entitled to summary

11  judgment when "the movant shows that there is no genuine issue as to any material fact and the

12  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

13  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

14  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

15  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

16  of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

17  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

18  other hand, where reasonable minds could differ on the material facts at issue, summary

19  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

20    "The purpose of summary judgment is to avoid unnecessary trials when there is no

21  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

22

23

---

[1] Defendants acknowledge in their reply that this defense does not apply to Daniels and Gittere, who were sued only in the official capacity. (ECF No. 67 at 4:7-10.)

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin,* 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

1       If the moving party satisfies its initial burden, the burden shifts to the opposing party to

2  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

3  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

4  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

5  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

6  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

7  (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

8  by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

9  U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

10  pleadings and set forth specific facts by producing competent evidence that shows a genuine

11  dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

12                             **III. DISCUSSION**

13  **A. Facts**

14       The following facts are not disputed:

15       Plaintiff Blake has declared his faith as Hindu since December 16, 2016. (ECF No. 60-1

16  at 2.) Plaintiff believes in Ahimsa, which requires a vegan way of life, and includes eliminating

17  or reducing animal, animal byproducts, eggs, milk, and canned foods from the diet. (Pl. Decl.,

18  ECF No. 59 at 18-19 ¶ 3.) Plaintiff cannot attend religious services, and there is no clergy

19  specific to Hindus at ESP. (*Id*. at 19 ¶ 5.)

20       In January of 2017, NDOC did not offer a vegan diet. On January 12, 2017, Plaintiff

21  requested to be placed on the CFM diet, stating that he adhered to the Ahimsa vegan diet, and

22  could not eat flesh foods, eggs, leather, dairy or other animal byproducts. He said that the AMD

23  was not fit for the Hindu Ahimsa diet, but CFM was the closest diet to accommodate the Ahimsa

vegan diet as far as fruits and vegetables are concerned, and it offered minimal meat. (ECF No. 60-2.)

On February 1, 2017, Rabbi M. Mallinger responded that Plaintiff's faith group was Hindu, and as such, Plaintiff was not eligible for the CFM. Instead, the appropriate menu was the AMD. (ECF No. 60-3; *see also* Mallinger Decl., ECF No. 60-4.)

On February 22, 2017, Plaintiff sent a request for accommodation of religious practices form indicating he would like to add CFM to the practice of Hinduism due to the Ahimsa, a vegan way of life, which includes no flesh foods, eggs, dairy, or other animal byproducts. (ECF No. 60-5.) On April 12, 2017, Chaplain Snyder sent Plaintiff a letter on behalf of the Religious Review Team, stating that inmates with the declared faith of Hindu are eligible for the AMD, and denied Plaintiff's request for the CFM accommodation. (ECF No. 60-6.)

On May 3, 2017, Plaintiff filed an informal level grievance asking to be placed on the CFM. He repeated that the AMD did not meet the requirements of the Ahimsa in the Hindu practice, which forbids the consumption of meat and dairy products, because the AMD served a great proportion of dairy products. CFM, on the other hand, had minimal meat and provided a great portion of fruits and vegetables. (ECF No. 60-7 at 8, 10.) F. Hammel responded to the informal level grievance. Plaintiff was advised that to be placed on the CFM, he had to follow AR 814.03, and submit a religious diet accommodation form and show the reason why the request was denied. (ECF No. 60-7 at 9.)

Plaintiff filed a first level grievance on July 12, 2017, attaching a copy of his religious diet accommodation request form, and stated he was denied CFM due to his Hindu faith. (ECF No. 60-7 at 6.) Filson responded to the first level grievance, stating that placement on the CFM

1  was denied because a Hindu inmate is not eligible for CFM, and the appropriate menu for a

2  Hindu inmate is the AMD. (ECF No. 60-7 at 7.)

3        Plaintiff filed a second level grievance on August 30, 2017, stating that his religious

4  rights had been infringed. He reiterated that the AMD includes eggs, dairy, and animal

5  byproducts, which violate his Hindu Ahimsa beliefs. (ECF No. 60-7 at 2, 4.) Thomas responded

6  to the second level grievance, denying the request for placement on the CFM because Hindus are

7  not eligible for that menu, but instead are eligible for the AMD. (ECF No. 60-7 at 3.)

8        NDOC's Faith Group Overview, states that an inmate who has declared the Hindu faith

9  should be served the AMD. (ECF Nos. 60-12 at 11, 60-13.) The Faith Group Overview provides

10 that Islam/Muslim inmates may receive the AMD or CFM. (*Id.* at 12.) Adherents of Judaism may

11 receive the CFM diet. (*Id*. at 13.)

12       During the relevant time period, the AMD offered substitutions that included no meat

13 "for inmates wishing to participate in a vegetarian type lifestyle," but it had no vegan menu

14 substitutions. (ECF No. 60-8 at 2.)

15       In May of 2020, NDOC modified the AMD to be a vegan diet (ECF Nos. 60-10, 60-11);

16 however, Plaintiff filed several inmate request forms and grievances asserting that he still

17 received eggs with his meals on the modified diet. (ECF No. 59 at 110-147.)[2]

18 **B. Personal Participation**

19       Defendants acknowledge this argument only applies to Thomas. They argue that there is

20 no evidence that Thomas did anything more than respond to Plaintiff's grievance, and this is not

21 sufficient to constitute personal participation in the alleged constitutional violations.

22

23 [2] Plaintiff was not permitted to proceed with a claim regarding the modified Alternative Meatless Diet that NDOC began offering in 2020; although, as will be discussed further below, this modified diet is relevant to his request for prospective injunctive relief.

Plaintiff argues that Thomas failed to correct the alleged violation despite reviewing Plaintiff's requests and denying his grievance, and having final decision-making authority over religious accommodations.

In *Snow v. McDaniel*, the Ninth Circuit found that where the warden and his assistants were aware of grievances regarding inappropriate medical treatment and failed to act to prevent further harm, they were not entitled to summary judgment. *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (citation and quotation marks omitted), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

Where a grievance puts a prison official on notice of an ongoing violation, the prison official's knowing failure to respond or intervene may establish liability under section 1983. *See Henderson v. Muniz*, 196 F.Supp.3d 1092, 1104 (N.D. Cal. Jul. 20, 2016). By way of example: "If a defendant only denied an inmate appeal about a religious problem that had already occurred and was complete (*e.g.* an exclusion of the inmate from a religious ceremony on a past date), there would be no liability for a constitutional violation; however, where the problem is an ongoing religious need and the request is made in an inmate appeal to remedy the ongoing problem, liability can be based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request from the inmate." *Id*.

Here, the denial of either a truly vegan diet, or alternatively, placement on the CFM, was an ongoing issue when Thomas responded to Plaintiff's grievance. Therefore, this may be a basis for liability for Thomas.

To the extent Defendants argue they are entitled to summary judgment because they did not personally participate in any alleged constitutional violation, their motion should be denied.

**C. First Amendment Free Exercise Clause**

### 1. Standard

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment...prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).

To implicate the Free Exercise Clause, a prisoner must first establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "The Free Exercise Clause does not require plaintiffs to prove the centrality or consistency of their religious practice: 'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith.'" *Jones v. Slade,* 23 F.4th 1124, 1145 (9th Cir. 2022) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 689 (1989)). The test is whether the plaintiff sincerely believes the conduct at issue is consistent with his faith. *Id*. (citation omitted).

Next, "a person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d 1023, 1032 (9th Cir. 2015) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987), *aff'd sub nom. Hernandez*, 490 U.S. at 699).

"Once a claimant demonstrates that the challenged regulation impinges on his sincerely held religious exercise, the burden shifts to the government to show that the regulation is 'reasonably related to legitimate penological interests.'" *Jones,* 23 F.4th at 1144 (quoting *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015)).

In analyzing the legitimacy of regulation of a prisoner's religious expression, the court is instructed to utilize the "reasonableness" factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). *See O'Lone*, 482 U.S. at 349; *Jones*, 791 F.3d at 1032; *Shakur*, 514 F.3d at 884. The *Turner* factors are: (1) is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

**2. Analysis**

**a. Sincerely Held Belief**

It is undisputed that Plaintiff is a Hindu adherent who believes in Ahimsa, which requires a vegan diet. (ECF No. 59 at 18-19 ¶¶ 3-4; ECF No. 60 at 10 ("There is no doubt that Blake is a devout Hindu."); ECF No. 64 at 6 ("Defendants have never argued his beliefs [in Hinduism and the adherence to the principals of Ahimsa regarding 'a vegan way of life' including its dietary commands] are not sincere.").) The court's inquiry now turns to whether there was a substantial burden on Plaintiff's religious practice.

**b. Substantial Burden**

1   Plaintiff asserts that while he requires a vegan diet, NDOC did not offer a vegan diet in

2   2017, and he requested to participate in NDOC's CFM because it aligned more closely with his

3   religious beliefs than the AMD being offered to him by NDOC. This is because the AMD in

4   2017 contained meat, milk, eggs, animal byproducts, and canned fruit.  The CFM, by contrast,

5   did contain limited meat products, but the meat products were kosher and so less cruel to

6   animals, and the diet was rich in fresh fruits and vegetables. Plaintiff also asserts that CFM had

7   less dairy. (Pl. Decl., ECF No. 59 at 19-20 ¶¶ 5-6.) Plaintiff claims that denying him access to a

8   vegan diet, and then to the CFM, substantially burdened his religious practice.

9   Defendants argue that Plaintiff's religious practice was not substantially burdened

10   because Plaintiff was offered the AMD, and the CFM was not a better alternative because it also

11   contained eggs, dairy, or animal byproducts.

12   Defendants' argument, however, ignores the fact that the AMD is *not vegan*.  Therefore,

13   the AMD does not conform to Plaintiff's faith. ( *See* ECF No. 59 at 41, Dzurenda's response to

14   requests for admission 4, 5; ECF No. 60-8 (confirming the AMD offered no vegan

15   substitutions).) While Defendants argue the AMD conformed with Plaintiff's religious beliefs,

16   Defendants do not actually dispute Plaintiff's contention that the CFM contained less in the way

17   of dairy products and more fresh fruits and vegetables than the AMD.

18   Plaintiff was told by Chaplain Mallinger, Chaplain Snyder, Filson, and Thomas that a

19   person whose designated faith group is Hindu is not eligible for CFM, and the appropriate menu

20   for Plaintiff was the AMD. (ECF No. 59 at 87, 89, 98.) Their responses to his request to be

21   placed on the CFM did not address Plaintiff's complaint that the AMD contained eggs, dairy,

22   and animal byproducts (*i.e.*, was not vegan), and the CFM more closely aligned with his vegan

23   beliefs.

12

1      Plaintiff states that in light of these responses, in order to receive the meal that he felt

2   more closely aligned with his Hindu beliefs (CFM), he would have had to resign his faith and

3   designate himself as Jewish or Muslim. In *Warsoldier v. Woodford,* the Ninth Circuit said that a

4   prison policy that "intentionally puts significant pressure on inmates … to abandon their

5   religious beliefs … imposes a substantial burden on [the inmate's] religious practice."

6   *Warsoldier*, 418 F.3d 989, 996 (9th Cir. 2005). The Ninth Circuit recognized in *Shakur* that

7   putting an inmate to a "Hobson's choice between options that are mutually unacceptable to his

8   practice of his religious faith" can substantially burden his religion. *Shakur*, 514 F.3d at 889

9   (citation omitted). Shakur was Muslim and was forced to choose between eating a vegetarian diet

10  that was Halal but disruptive to his religious practices, or a regular diet that was Haram and

11  forbidden by his religion, or changing his religious designation to Jewish so he could obtain the

12  desired kosher meals. The Ninth Circuit found there was a factual dispute regarding the extent to

13  which the prison's policies pressured Shakur to betray his religious beliefs. *Id.*

14      Here, the facts are not in dispute. Therefore, the court finds the Defendants substantially

15  burdened Plaintiff's religious practice in denying him a vegan diet, and then denying him a

16  substitute diet that was more closely aligned with his religious beliefs.

17              **c. *Turner* Factors**

18      The court's inquiry now turns to whether Defendants' denial is reasonably related to

19  legitimate penological interests by analyzing the "reasonableness" factors under *Turner v. Safley*,

20  482 U.S. 78 (1987).

21      The first *Turner* factor is whether there is a valid, rational connection between

22  Defendants' denial and a legitimate government interest put forward to justify the denial.

23

13

1    Plaintiff argues that the first *Turner* factor weighs in his favor because Defendants have

2    not offered a legitimate penological interest to justify denying him a vegan diet or limiting the

3    CFM to Jewish and Muslim inmates.

4    Defendants' motion for summary judgment fails to even address the *Turner* factors. (*See*

5    ECF No. 60 at 9-10.) Their response to Plaintiff's motion for summary judgment appears to

6    assert that the legitimate penological basis for denial of the CFM is that the AMD was available

7    to Plaintiff, and it "strictly conforms" to his religious beliefs. (ECF No. 64 at 8:5-6.) Defendants'

8    position ignores the fact that the AMD did not "strictly conform" to Plaintiff's religious beliefs

9    because it was not vegan.

10    Defendants also argue in their response to Plaintiff's motion and in their reply that

11    providing the CFM to Plaintiff would put an undue burden on NDOC to provide a special

12    religious diet to those whose religious beliefs do not require such a diet. They contend that this

13    would result in additional expense, and would raise safety, security, and health risks because

14    limited resources would be taken away from security and program needs. (ECF No. 64 at 8, ECF

15    No. 67 at 4.) Defendants, however, provide absolutely *no evidence* to support this argument.

16    As such, the first *Turner* factor weighs in Plaintiff's favor.

17    The second *Turner* factor is whether "other avenues" remain available for Plaintiff to

18    exercise the asserted right. Under the second *Turner* factor, "[t]he relevant inquiry...is not

19    whether the inmate has an alternative means of engaging in the particular religious practice that

20    he or she claims is being affected; rather, [the court must] determine whether the inmates have

21    been denied all means of religious expression." *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993).

22    In *Shakur*, the Ninth Circuit concluded the inmate had other means of practicing his religion

23    where he could keep a copy of the Qur'an in his cell, he had a prayer rug and other religious

14

1   items, he could have visits from the Imam, and he could observe Ramadan. *Shakur,* 514 F.3d at

2   886.

3        Plaintiff argues he does not have alternative means of practicing Hinduism, because at

4   ESP he is not permitted to attend religious services and no Hindu clergy exists. (Pl. Decl., ECF

5   No. 59 at 19 ¶ 5.)

6        Defendants acknowledge that Plaintiff is not permitted to attend religious services, but

7   they argue he can still practice religious activities in his cell.  Defendants contend he has been

8   provided a diet that is more in line with his beliefs than the CFM.

9        Defendants provide no argument or evidence regarding *what* religious activities Plaintiff

10  may still practice in his cell. They also contend he can still practice his religion because he is

11  being provided with the AMD.  However, Defendants fail to recognize that the AMD is not

12  vegan, and so it does not conform to Plaintiff's religious beliefs. Moreover, Defendants admit

13  Plaintiff has no religious services, and there is no Hindu clergy at ESP.

14       Under these circumstances, the second *Turner* factor also weighs in Plaintiff's favor.

15       The third *Turner* factor is the impact accommodating Plaintiff's constitutional right will

16  have on guards and other inmates, and on the allocation of prison resources generally.

17       Plaintiff argues there would be no impact on guards or the institution because ESP

18  already provides the CFM to Jewish and Muslim prisoners.

19       Defendants argue that allowing Plaintiff to have the CFM would be more detrimental to

20  his diet, and it would place an undue burden on the institution.  Consequently, there is an adverse

21  impact on guards, inmates and resources because the protocols require "a lot of time, man power,

22  and extensive preparation that each institution would not be able to sustain."

23

1    Again, Defendants provide absolutely *no evidence* to substantiate their argument

2    concerning the impact on the institution, and they ignore that the AMD was not vegan. In

3    *Shakur*, the Ninth Circuit concluded that a pastoral administrator's affidavit that contained a

4    conclusory assertion that providing 850 Muslim inmates with kosher meals would cost an

5    additional $1.5 million annually was insufficient evidence that the accommodation would have a

6    detrimental impact on the institution. The court pointed out that the prison had not provided

7    evidence that had actually looked into providing kosher meals to the Muslim inmates, or that it

8    investigated suppliers of Halal meat, or that it had sought bids or quotes or studied in any way

9    how the requested accommodation would impact the prison. *Shakur*, 514 F.3d at 887.

10    Defendants only provide a conclusory argument regarding the impact providing Plaintiff

11    with CFM may have on the prison. They do not provide a supporting declaration, let alone one

12    that indicates some sort of investigation was undertaken with respect to the provision of CFM

13    meals to Plaintiff or other Hindu inmates. Without any evidentiary support for Defendants'

14    claimed impacts, the court finds the third *Turner* factor also weighs in Plaintiff's favor.

15    The fourth *Turner* factor looks at the absence of ready alternatives or the existence of

16    obvious, easy alternatives.

17    Plaintiff argues that allowing him to receive the CFM was an obvious and adequate

18    alternative because CFM was already provided for Muslim and Jewish prisoners.

19    Defendants argue there is already an adequate alternative to the vegan diet in the AMD

20    that Plaintiff was allowed to receive. As such, they contend the CFM is not a reasonable

21    alternative.

22    First, the fact that NDOC modified its Alternative Meatless Diet in 2020 to be a vegan

23    diet is itself some evidence that obvious, easy alternatives existed to denying Plaintiff a vegan

16

diet. Second, Defendants persist in their argument that the AMD was an adequate alternative, while ignoring the basic fact that this diet was *not vegan*. Moreover, "[t]he evidence also shows that the prison accommodates the dietary requirements of other religious groups [*i.e.*, the Jewish and Muslim inmates with the CFM] … without disruption." *Ashelman v. Wawrzaszek*, 111 F.3d 675, 678 (9th Cir. 1997). Under these circumstances, it does not appear that any "difficulties envisioned by the prison" such as additional expense and taking away from other programs, "are insurmountable." *Id.*

Thus, the fourth *Turner* factor also weighs in Plaintiff's favor.

In sum, the court finds: (1) Plaintiff has a sincerely held religious belief that he requires a vegan diet; (2) Defendants substantially burdened his religious exercise in denying him a vegan diet or a suitable alternative that aligned closer to his religious beliefs; and (3) Defendants have not demonstrated that the denial was reasonably related to legitimate penological interests. Therefore, Plaintiff's motion for summary judgment should be granted, and Defendants' motion should be denied, as to the First Amendment Free Exercise Clause claim.

**D. RLUIPA**

**1. Standard**

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA is "more generous to the religiously observant than the Free Exercise Clause." *Jones,* 23 F.4th at 1139 (citations omitted).

"The Supreme Court has recognized RLUIPA as...[a] 'congressional effort[] to accord religious exercise heightened protection from government-imposed burdens[.]'" *Greene* v.

*Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)). "As such, RLUIPA is to be 'construed broadly in favor of protecting an inmate's right to exercise his religious beliefs.'" *Jones*, 23 F.4th at 1140 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *see also Johnson v. Baker*, 23 F.4th 1209, 1214 (9th Cir. 2022) (citation omitted). However, "[c]ourts are expected to apply RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Hartmann*, 707 F.3d at 1124 (internal quotation marks and citation omitted).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief ..., and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted); *see also Jones*, 23 F.4th at 1140; *Johnson*, 23 F.4th at 1214

"In the context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has held that a substantial burden occurs 'where the state...denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on the adherent to modify his behavior and to violate his beliefs." *Hartmann*, 707 F.3d at 1125 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)) (internal quotation marks omitted); *see also Jones*, 23 F.4th at 1142. A "substantial burden" on "religious exercise" "must impose a significantly great restriction or onus upon such exercise." *Greene*, 513 F.3d at 987 (quoting *San Jose Christian Coll. V. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)); *Jones*, 23 F.4th at 1142 (citation omitted).

"A policy may impose a substantial burden on religious exercise in a number of ways." *Jones,* 23 F.4th at 1140. "A regulation may impact religious exercise directly, by forbidding conduct that an inmate believes he is religiously compelled to do, *see O'Lone v. Est. of Shabazz,* 482 U.S. 342, 344-45 … (1987) (assigning Muslim prisoners to work schedule that prevented them from attending Friday prayer services commanded by Qur'an), or by compelling an inmate to do that which he believes he is religiously forbidden from doing, *see Holt,* 574 U.S. at 355, 359 … (requiring Muslim prisoner to violate religious beliefs that forbade trimming his beard); *Warsoldier,* 418 F.3d at 992, 995-96 (requiring Native American prisoner to violate religious beliefs that forbade cutting his hair)." *Id.* "More subtly, a regulation may impact religious exercise indirectly, by encouraging an inmate to do that which he is religiously prohibited or discouraged from doing, *see Greenhill v. Clarke*, 944 F.3d 243, 259-51 (4th Cir. 2019) (withholding participation in religious services 'as an incentive to improve inmate conduct'), or by discouraging an inmate from doing that which he is religiously compelled or encouraged to do, *see Jones v. Carter,* 915 F.3d 1147, 1150-51 (7th Cir. 2019) (discouraging inmates from choosing halal meals by charging for halal meat); *Shilling v. Crawford,* 536 F.Supp.2d 1227, 1233 (D. Nev. 2008) (offering Jewish prisoner choice between staying at a medium security facility without kosher meals or transferring to a maximum security facility with kosher meals), *aff'd* 377 F.Appx. 702 (9th Cir. 2010)." *Id.*

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-1(a), (b); *Holt,* 135 S.Ct. at 857 (citation omitted); *Jones,* 23 F.4th at 1141 (citations omitted); *Greene*, 513 F.3d at 988.

19

1       This is an "exceptionally demanding" standard, which requires the government to

2   "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial

3   burden on the exercise of religion by the objecting part[y]." *Holt*, 135 S.Ct. At 858 (internal

4   citation and quotation marks omitted).

5       "Although RLUIPA adopts a compelling interest standard, context matters in the

6   application of the standard, and courts should act with 'due deference to the experience and

7   expertise of prison and jail administrators in establishing necessary regulations and procedures to

8   maintain good order, security and discipline, consistent with consideration of costs and limited

9   resources.'" *Jones,* 23 F.4th at 1141 (quoting *Cutter,* 544 U.S. at 723).

10   **2. Analysis**

11       Again, there is no dispute that Plaintiff has a sincerely held belief that he must maintain a

12   vegan diet as a Hindu adherent that believes in Ahimsa.

13       The parties' arguments regarding whether Plaintiff's religious exercise was substantially

14   burdened are the same as those asserted with respect to the Free Exercise Clause.  The court

15   again finds that Defendants substantially burdened Plaintiff's religious exercise.

16       The court's analysis now turns to whether Defendants have met their burden of

17   establishing that their conduct furthers "a compelling governmental interest," and does so "by the

18   least restrictive means."

19       Defendants' argument is that offering Plaintiff the CFM was not the least restrictive

20   means because it would not confirm with Plaintiff's religious beliefs, and the AMD does because

21   it is a vegetarian diet.

22       While prison administrators are "accorded deference," they must establish that they

23   "actually considered and rejected the efficacy of less restrictive measures before adopting the

challenged practice." *Greene*, 513 F.3d at 989 (quoting *Warsoldier*, 418 F.3d at 999) (internal

quotation marks omitted). "[I]n light of RLUIPA, no longer can prison officials justify

restrictions on religious exercise by simply citing the need to maintain order and security in a

prison. RLUIPA requires more." *Id*. at 989-90. Moreover, "RLUIPA does not permit ...

unquestioning deference." *Holt,* 574 U.S. at 364; *see also Johnson,* 23 F.4th at 1217 ("we don't

grant 'unquestioning deference' to the government's claim of a general security interest").

"Instead, 'prison officials *must* set forth detailed evidence, tailored to the situation before the

court, that identifies the failings in the alternatives advanced by the prisoner.'" *Johnson*, 23 F.4th

at 1217 (emphasis original, quoting *Warsoldier*, 418 F.3d at 1000). "To this end, RLUIPA

requires a 'more focused' inquiry that looks at the challenged regulation's application to 'the

particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id*.

(quoting *Holt*, 574 U.S. at 363). "[T]he government may not satisfy the compelling interest test

by pointing to a general interest—it must show the 'marginal interest in enforcing' the [policy at

issue against the particular inmate]." *Id*. (citation omitted).

First, Defendants' assertion that the AMD better conformed to Plaintiff's belief in a

vegan diet than the CFM is not a "compelling" government interest for denying Plaintiff access

to the CFM where Defendants admit that the AMD was not vegan. Moreover, Defendants

provide *no evidence* that providing Plaintiff (who requires a vegan diet under his faith) with one

non-vegan diet over another non-vegan diet advances any government interest, let alone a

"compelling" one.

Second, Defendants provide vague references to the additional cost of providing Plaintiff

with CFM, and briefly argue that this would take resources away from other interests of the

1  prison, including safety and security and other programs. However, these terse statements,

2  without any evidentiary support, are insufficient to meet their burden on summary judgment.

3         As such, Plaintiff's motion for summary judgment should be granted, and Defendants'

4  motion should be denied, as to the RLUIPA claim.

5  **E. Equal Protection**

6         "The Equal Protection Clause requires the State to treat all similarly situated people

7  equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v.*

8  *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To prevail on an Equal Protection claim under

9  § 1983, the plaintiff  must establish that "the defendants acted with an intent or purpose to

10  discriminate against [him] based upon membership in a protected class." *Hartmann,* 707 F.3d at

11  1123 (quotation marks and citation omitted).

12         "[T]he Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of

13  pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to

14  conventional religious precepts.'" *Shakur,* 514 F.3d at 891 (quoting *Cruz*, 405 U.S. at 322).

15  "This does not mean, however, that all prisoners must receive identical treatment and resources."

16  *Hartmann*, 707 F.3d at 1123 (citing *Cruz*, 405 U.S. at 322 n. 2.; *Ward*, 1 F.3d at 880; *Allen v.*

17  *Toombs*, 827 F.2d 563, 568-69 (9th Cir. 1987)).

18         Defendants argue that as a Hindu adherent, Plaintiff was entitled to the AMD, which is a

19  better option for Hindu inmates as it served no meat, while the CFM is not vegetarian.

20  Defendants further argue that Plaintiff was not singled out because of his faith as all Hindu

21  inmates received the same treatment.

22         Plaintiff points out that AR 814 states that the CFM intends to accommodate inmates

23  whose sincere religious/spiritual dietary needs cannot be met by the master menu without

prohibiting their free exercise of or without substantially burdening their sincere religious

exercise, but the Defendants restrict the CFM to Muslim and Jewish inmates. (ECF No. 65 at

62.)

In *Shakur*, the inmate was Muslim, and the prison provided a kosher diets to Jewish

inmates. Shakur requested the kosher diet because it was consistent with the Halal requirements

his faith required, but the prison denied his request. *Shakur*, 514 F.3d at 882. The Ninth Circuit

said the district court should have focused on the inmate's status as a Muslim, and used the

*Turner* factors in its analysis of Shakur's equal protection claim. *Id.* at 891. Defendants fail to

provide any analysis or any evidence concerning the *Turner* factors in their motion. Therefore,

they have not met their burden, and Defendants' motion should be denied as to Plaintiff's equal

protection claim.

**F. Qualified Immunity**

Defendants argue they are entitled to qualified immunity because they relied on AR

810.3, which has not been deemed unconstitutional. In their reply brief, they acknowledge the

defense is asserted only on behalf of Thomas because Daniels and Gittere are only sued in their

official capacity.

"In evaluating a grant of qualified immunity, a court considers whether (1) the state

actor's conduct violated a constitutional right and (2) the right was clearly established at the time

of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021)

(citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*,

555 U.S. 223 (2009)). "Either question may be addressed first, and if the answer to either is 'no,'

then the state actor cannot be held liable for damages." *Id*. at 968 (citation omitted).

1    Thomas is not entitled to qualified immunity. First, as to the First Amendment and

2    RLUIPA claims, the court has concluded that Plaintiff's rights were violated. With respect to the

3    equal protection claim, a fact finder viewing the facts in the light most favorable to Plaintiff

4    could determine that Plaintiff's rights under the Equal Protection Clause were violated.

5    Moreover, it was clearly established that inmates "have the right to be provided with food

6    sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea*

7    *v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (citation omitted).

8    Therefore, Defendants' motion for summary judgment on the basis of qualified immunity

9    should be denied.

10    **G. Relief**

11        **1. RLUIPA**

12    An inmate cannot recover damages under RLUIPA against prison officials. *Sossamon v.*

13    *Texas*, 563 U.S. 277, 285 (2011); *Wood v. Yordy,* 753 F.3d 899, 904 (9th Cir. 2014); *Jones v.*

14    *Slade,* 23 F.4th 1124, n. 4 (9th Cir. 2022). Instead, "[a] RLUIPA plaintiff may only sue

15    defendants in their official capacities for prospective injunctive relief." *Jones,* 23 F.4th at n. 4.

16    Therefore, Plaintiff's RLUIPA claim may only proceed against Defendants in their

17    official capacities for prospective injunctive relief.

18        **2. Injunctive Relief**

19    Defendants argue that Plaintiff's request for injunctive relief is moot because Plaintiff is

20    now receiving a vegan diet.

21    Defendants provide a copy of the modified AMD (as of May 29, 2020). The menu

22    indicates it does not contain meat, milk, or eggs, and it appears to offer fresh vegetables. (ECF

23    No. 60-11.)

1    Plaintiff has raised an issue of fact as to whether the modified AMD comports with his

2   religious dietary requirements (*i.e.*, a vegan diet) because he states in his declaration and has

3   produced kites and grievances demonstrating that he was still served eggs and other animal

4   byproducts with this diet.[3] (Pl. Decl., ECF No. 59 at 20 ¶ 5, ECF No. 59 at 110, 111, 121, 122,

5   123, 124, 133, 139.) Some of the responses to his requests admit that eggs are not vegan, and

6   Plaintiff should not be receiving them. (ECF No. 59 at 122, 134, 139.)

7    To the extent Defendants move for summary judgment with respect to Plaintiff's request

8   for injunctive relief, their motion should be denied.

9    **3. Money Damages**

10    "[F]ederal courts are barred by the Eleventh Amendment from awarding damages against

11   state officials acting in their official capacities[.]" *Snow v. McDaniel*, 681 F.3d 978, 991 (9th Cir.

12   2012) (citing *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003)). Daniels

13   and Gittere are sued only in their official capacity.  As such, Plaintiff may not pursue damages

14   against either of those defendants. His request for damages may only proceed as to Thomas in

15   insofar as Thomas is sued in the individual capacity.

16    **IV. RECOMMENDATION**

17    IT IS HEREBY RECOMMENDED that the District Judge enter an order:

18   (1) **GRANTING** Plaintiff's motion for summary judgment (ECF No. 59) as to the First

19   Amendment Free Exercise Clause and RLUIPA claims;

20   (2) **DENYING** Defendants' motion for summary judgment (ECF No. 60).

21

22   ---

23   [3] Plaintiff also raises an issue about receiving smaller portions than inmates receiving the standard menu; being denied breakfast and lunch meals; and being served food on trays with sexually explicit comments written on them; however, these allegations are not proceeding in this action.

This matter should proceed to trial with respect to (1) damages on Plaintiff's Free Exercise Clause and RLUIPA claims and (2) the merits and damages of Plaintiff's equal protection claim. At trial, Plaintiff should be limited to an award of prospective injunctive relief against Defendants in their official capacities for his RLUIPA claim. For the First Amendment Free Exercise Clause and Equal Protection claims (if successful on liability for the latter), Plaintiff may recover injunctive relief against Defendants in their official capacities, but he may only recover damages against defendant Thomas insofar as Thomas is sued in the individual capacity.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.


Dated: May 3, 2022

_____
Craig S. Denney
United States Magistrate Judge