1

2                    UNITED STATES DISTRICT COURT

3                          DISTRICT OF NEVADA

4    ALFONSO M. BLAKE,                     Case No. 3:19-cv-00321-ART-CSD

5                              Petitioner,  ORDER ON SUMMARY JUDGMENT
                                                     ON REMAND
6          v.

7    JAMES DZURENDA, et al.,

8                             Respondents.

9          Plaintiff Alfonso M. Blake was at the time this lawsuit was filed an inmate

10   in the custody of the Nevada department of Corrections ("NDOC"), residing at Ely

11   State Prison ("ESP"). This case involves Blake's claim under 42 U.S.C. § 1983,

12   alleging that he was denied a vegan diet consistent with his Hindu beliefs, and

13   that he was denied, as an alternative to a vegan diet, the prison's Common Fare

14   Menu ("CFM"), a diet that aligned closer with his beliefs and was offered to Jewish

15   and Muslim inmates. Blake was instead provided with the Alternative Meatless

16   Diet ("AMD") which contained no meat but did contain animal products and less

17   fruits and vegetables than CFM. Blake's complaint was screened, and he was

18   allowed to proceed with claims under the First Amendment's Free Exercise

19   Clause, the Religious Land Use and Institutionalized Persons Act of 2000

20   (RLUIPA), and the Fourteenth Amendment Equal Protection Clause.

21         On November 18, 2022, this Court entered an order adopting in part and

22   rejecting in part Magistrate Judge Denney's Report and Recommendation on the

23   parties' cross-motions for summary judgment. (ECF No. 74.) The Court granted

24   Blake's motion for summary judgment on his RLUIPA claim, granted Defendants'

25   motion for summary judgment with respect to Defendant Thomas in his

26   individual capacity due to lack of personal participation, and dismissed Blake's

27   First Amendment and equal protection claims as duplicative of his RLUIPA

28   claims. (*Id.*) Blake appealed, seeking review only of the dismissal of his First

                                    1

Amendment claim against Thomas in his individual capacity. (ECF Nos. 80, 93.) The Ninth Circuit reversed this Court's grant of summary judgment as to Defendant Thomas in his individual capacity, holding that because a reasonable jury could find that Thomas had the authority to grant Blake's request, the denial of said request could qualify as direct personal participation in the alleged deprivation of Blake's First Amendment free exercise right. (ECF No. 93.) The Ninth Circuit remanded this action for the Court to address Defendant's arguments on summary judgment that even if Thomas did personally participate in the alleged deprivation, (1) denying Blake's request did not violate Blake's First Amendment rights, (2) there was a legitimate penological reason for denying Blake's request, and (3) Thomas is entitled to qualified immunity. (*Id.*)

Plaintiff has also filed a motion to strike the declaration of Mr. Thomas, filed in support of Defendant's supplemental motion for summary judgment (ECF No. 102), which the Court addresses first.

## I.    Motion to Strike

Under Federal Rule of Civil Procedure 12(f) a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." However, this rule applies only to pleadings, and "courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, No. 2:12-CV-00560-MMD, 2014 WL 1305144, at *6 (D. Nev. Mar. 31, 2014) (citing *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) and *Bd. of Educ. of Evanston Twp. High Sen. Dist. No. 202 v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill.1982) (both denying motions to strike which were not pleadings)). Here, Blake moves to strike a declaration, not a pleading.

However, Blake does not argue that the declaration should be stricken under the Rule 12(f) standard. Rather, he argues that Thomas's declaration

should be stricken because it does not meet the requirements for an affidavit or declaration under Rule 56(c)(4). Blake argues that Thomas's declaration is inadmissible because it is not based on personal knowledge, is conclusory, and is unsupported. The Court will accordingly deny the motion to strike but will consider Blake's argument in his motion as an argument that the declaration is inadmissible.

Relevant to Blake's argument, Thomas's declaration states that as the Deputy Director at the time of Blake's grievance, they "had no authority to provide Plaintiff with a Common Fare Diet" and "had no authority to add another faith group to the Common Fare." (ECF No. 103-3 at 2.) The declaration also states that "[t]he Alternate Meatless diet had fewer meat products in the diet than the Common Fare diet and was closer to a Vegan diet." (*Id.*) Blake argues that these statements are not based on personal knowledge and are conclusory and unsupported.

The Court finds otherwise. Thomas, as the Deputy Director at the time, can be inferred to have had personal knowledge regarding the subjects in the affidavit. *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (personal knowledge can be inferred from a declarant's position and nature of participation in the matter). It is also not necessary for a declaration to state that it is based on personal knowledge for that to be the case. *Diaz v. V&V Farms, Inc.*, No. C-01-20424 RMW, 2002 WL 35644878, at *3 (N.D. Cal. Apr. 19, 2002). It can be presumed that Thomas would have personal knowledge regarding his authority as well as regarding the prison diets. The Court also notes that the menus for both diets are in the record. (ECF Nos. 60-9, 60-10.) Accordingly, the Court denies Blake's motion to strike.[1]

---

[1] The Court's analysis does not depend on, and the Court does not consider, the

## II.    Legal Standard

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). The Court views the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008). "When simultaneous cross-motions for summary judgment on the same claim are before the Court, the Court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citation omitted).

//

---

NDOC Vegan Menu attached to Defendant's supplemental briefing at ECF No. 100-3. However, the Court notes that this document appears to have been created post-discovery—it is dated 2023, and discovery closed in 2021. (ECF No. 56 at 3).

1  **III.     Undisputed Facts**

2           Blake has declared his faith as Hindu since December 16, 2016. (ECF No.

3  60-1 at 2.) Blake believes in Ahimsa, which requires a vegan way of life, and

4  includes eliminating or reducing animal, animal byproducts, eggs, milk, and

5  canned foods from the diet. (Pl. Decl., ECF No. 59 at 18-19 ¶ 3.) Blake cannot

6  attend religious services, and there is no clergy specific to Hindus at ESP. (*Id.* at

7  19 ¶ 5.)

8           In January of 2017, NDOC did not offer a vegan diet. On January 12, 2017,

9  Blake requested to be placed on the CFM diet, stating that he adhered to the

10  Ahimsa vegan diet, and could not eat flesh foods, eggs, leather, dairy or other

11  animal byproducts. He said that the AMD was not fit for the Hindu Ahimsa diet,

12  but CFM was the closest diet to accommodate the Ahimsa vegan diet as far as

13  fruits and vegetables are concerned, and it offered minimal meat. (ECF No. 60-

14  2.)

15           On February 1, 2017, Rabbi M. Mallinger responded that Blake's faith

16  group was Hindu, and as such, Blake was not eligible for the CFM. Instead, the

17  appropriate menu was the AMD. (ECF No. 60-3; Mallinger Decl., ECF No. 60-4.)

18           On February 22, 2017, Blake sent a request for accommodation of religious

19  practices form indicating he would like to add CFM to the practice of Hinduism

20  due to the Ahimsa, a vegan way of life, which includes no flesh foods, eggs, dairy,

21  or other animal byproducts. (ECF No. 60-5.) On April 12, 2017, Chaplain Snyder

22  sent Blake a letter on behalf of the Religious Review Team, stating that inmates

23  with the declared faith of Hindu are eligible for the AMD, and denied Blake's

24  request for the CFM accommodation. (ECF No. 60-6.)

25           On May 3, 2017, Blake filed an informal level grievance asking to be placed

26  on the CFM. He repeated that the AMD did not meet the requirements of the

27  Ahimsa in the Hindu practice because the AMD served a great proportion of dairy

28  products. CFM, on the other hand, had minimal meat and provided more fruits

and vegetables. (ECF No. 60-7 at 8, 10.) Hammel responded to the informal level grievance. Blake was advised that to be placed on the CFM, he had to follow AR 814.03, and submit a religious diet accommodation form and show the reason why the request was denied. (*Id.* at 9.)

Blake filed a first level grievance on July 12, 2017, attaching a copy of his religious diet accommodation request form, and stated he was denied CFM due to his Hindu faith. (*Id.* at 6.) Filson responded to the first level grievance, stating that placement on the CFM was denied because a Hindu inmate is not eligible for CFM, and the appropriate menu for a Hindu inmate is the AMD. (*Id.* at 7.)

Blake filed a second level grievance on August 30, 2017, stating that his religious rights had been infringed. He reiterated that the AMD includes eggs, dairy, and animal byproducts, which violate his Hindu Ahimsa beliefs. (ECF No. *Id.* at 2, 4.) Thomas responded to the second level grievance, denying the request for placement on the CFM because Hindus are not eligible for that menu, but instead are eligible for the AMD. (*Id.* at 3.)

NDOC's Faith Group Overview states that an inmate who has declared the Hindu faith should be served the AMD. (ECF Nos. 60-12 at 11, 60-13.) The Faith Group Overview provides that Islam/Muslim inmates may receive the AMD or CFM. (*Id.* at 12.) Adherents of Judaism may receive the CFM diet. (*Id.* at 13.)

During the relevant time period, the AMD offered substitutions that included no meat "for inmates wishing to participate in a vegetarian type lifestyle," but it had no vegan menu substitutions. (ECF No. 60-8 at 2.)

## IV. Analysis

Because the Ninth Circuit held that summary judgment should not be granted as to Thomas's personal participation, the Court will now analyze whether Thomas is entitled to summary judgment on Blake's First Amendment claim because (1) denying Blake's request did not violate Blake's First Amendment rights, (2) there was a legitimate penological reason for denying

Blake's request, and (3) Thomas is entitled to qualified immunity.

### A. Violation of First Amendment Rights

To succeed on a First Amendment free exercise claim, a plaintiff must first show that their religious exercise rises out of sincerely held beliefs and is rooted in religious belief. *Jones v. Slade*, 23 F.4th 1124, 1144 (9th Cir. 2022). Second, the plaintiff must show that the challenged government action substantially burdens the plaintiff's exercise of religion. *Id.* at 1139, 1144. In the third step, the burden shifts to the government to justify the burden by showing that the activity is reasonably related to legitimate penological interests. *Id.* at 1144.

#### 1. Sincerely Held Belief and Substantial Burden

The Court's prior order adopting Judge Denney's Report and Recommendation already found that Blake had a sincerely held belief that he must maintain a vegan diet as a Hindu adherent that believes in Ahimsa, and that Blake's religious exercise was substantially burdened. (*See* ECF No. 74 at 9, granting summary judgment on Blake's RLUIPA claim). As such, summary judgment is also appropriate on the first two elements of Blake's First Amendment claim.

#### 2. Legitimate Penological Interests

After a plaintiff shows that government action substantially burdens religious exercise, the burden shifts to the defendant to show that the challenged regulation satisfies a legitimate penological interest by considering the factors elaborated in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). The *Turner* factors are: (1) is there a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives" and "the existence of obvious, easy

alternatives." *Id.*

### a. Valid Connection to Legitimate Penological Purpose

The Court's prior order found as to Blake's RLUIPA claim that "Defendants provide no evidence that providing Blake (who requires a vegan diet under his faith) with one non-vegan diet over another non-vegan diet advances any government interest, let alone a compelling one." (ECF No. 74 at 9.) RLUIPA has a stricter standard at this step, which requires the government to show that the practice is the least restrictive means of furthering a compelling government interest. *Holt v. Hobbs*, 574 U.S. 352, 362 (2015). For free exercise claims, the government need only show that the activity is reasonably related to legitimate penological interests. *Jones*, 23 F.4th at 1144.

In its supplemental briefing after remand, Defendant argues that "a prison has a legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). Defendant argues that here, allowing Blake to choose "one non-conforming diet over another" would burden NDOC's ability to run an efficient food service because it would "open the floodgates to allowing inmates to choose which diet they should be provided, regardless of their religious beliefs." (ECF No. 100 at 3.)

In *Shakur v. Schriro*, the Arizona Department of Corrections had denied Kosher meals (as an alternative to the requested Halal) to Muslim inmates, although a Kosher meal plan already existed. 514 F.3d 878, 886 (9th Cir. 2008). The Ninth Circuit held that the department "could rationally conclude that denying Muslim prisoners kosher meals would simplify its food service and reduce expenditures," making this factor weigh slightly in favor of the prison. *Id.*; *see also Lewis v. Ryan*, No. 04CV2468JLS(NLS), 2008 WL 1944112, at *21 (S.D. Cal. May 1, 2008) (first *Turner* factor weighs slightly in defendants' favor where they argued that pork-free diet currently offered and refusal to offer kosher diet

was rationally related to maintaining simplified food service). Similarly to *Shakur*, while the administrative burden seems minimal because the CFM is an existing meal plan and the request is for a single inmate, "we cannot conclude that no rational nexus exists between [NDOC's] dietary policies and its legitimate administrative and budgetary concerns." *Shakur*, 514 F.3d at 886. Accordingly, this factor weighs slightly in favor of Defendant.

### b. Alternative Means of Exercising Right

Defendant argues that under the second *Turner* factor, Blake had alternative methods of engaging in religious practice. "The relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression." *Ward*, 1 F.3d at 877. Blake states in his declaration that he had "limited material" at ESP, there are no Hindu clergy, and cannot attend religious services. (ECF No. 59 at 19.) Defendant counters by asserting that under AR 810.2, and according to the NDOC "Faith Group Overview" document, Hindu inmates are permitted individual study and prayer in private, as well as weekly group study subject to scheduling approval. (ECF Nos. 60-12 at 11; 60-13 at 11.) They also point to the NDOC Religious Practice Manual, which provides that an inmate can seek assistance from the chaplain to obtain donations and volunteers as well as form study groups, and that in the event no volunteer is found, two inmates may be appointed to facilitate services. (ECF No. 100-1, 5(A)(7)-(8), 7(A).) Thomas's declaration states that "[w]hile there was no Hindu cleric at the NDOC, offenders were allowed to study and pray in private, attend weekly services, act as a facilitator for their faith, and request visits from outside leaders. Plaintiff had that ability." (ECF No. 100-3 at 3.)

While Defendant argues that Blake has these opportunities pursuant to NDOC policies, it has not offered any evidence as to whether Blake can actually

take advantage of them. For example, there is no evidence in the record of whether there are enough Hindu inmates to form a study group, or whether the chaplain was able to obtain volunteers or outside Hindu leaders available for visits. If none of these were actually available to Blake, the second *Turner* factor is not satisfied. *See Ward*, 1 F.3d 873 (private observances of faith only does not satisfy second *Turner* factor where inmate in remote area had no access to faith leader, religious services, or ability to congregate with other practitioners of his faith). While Defendant cites to *Shakur* in support of their argument, there, the plaintiff had access to specific religious items for prayer in his cell, he could receive visits from an imam, and could observe Ramadan. *See Shakur*, 514 F.3d at 886. Here, there is no evidence of what religious practice Blake could undertake in his cell, nor that he is able to work with a faith leader or observe any religious rituals.

Plaintiff also contends that a vegan diet is not a mere "positive expression" of his religion. (ECF No. 59 at 12.) The Ninth Circuit, in considering the second *Turner* factor, distinguishes between practices which are a "positive expression" and those which are "a commandment which the believer may not violate at the peril of his soul." *Ward*, 1 F.3d at 878. When a policy forces disobedience of a religious law, this factor favors the inmate. *Shilling v. Crawford*, No. 2:05-CV-00889-PMP-GWF, 2007 WL 2790623, at *17 (D. Nev. Sept. 21, 2007) (citing *Ward*, 1 F.3d at 878.) Here, Plaintiff points to his declaration in support of his belief in Ahimsa, which is a "non-harming" practice, and "includes eliminating or reducing animal by-products, eggs, milk, and canned foods from [his] diet." (ECF No. 59 at 19.) Defendant does not refute Plaintiff's assertion.

This factor seems to favor Blake, as there is evidence that his religious practice is significantly curtailed by his incarceration, and he has limited if any other means to practice his religion. Blake has also put forth evidence that his need for a vegan diet is not a mere "positive expression" of his religion,

heightening the concern identified in *Ward. See Henderson v. Terhune*, 379 F.3d 709 (9th Cir. 2004) (citing *Ward*, 1 F.3d at 877). However, there are also material issues of fact which preclude the Court's ultimate determination of this factor— what opportunities (outside of private practice) Blake actually had to practice Hinduism.

### c. Impact on Guards, Other Inmates, and Allocation of Resources

Defendant argues that under the third *Turner* factor, allowing Blake to have the Common Fare Menu would adversely affect other inmates and prison staff.

Defendant first argues that granting Blake access to a diet which does not conform with his religious beliefs could result in a perception of favoritism, which could in turn create unrest. While the Ninth Circuit has recognized favoritism as a concern, it has also discounted it with regards to this factor, holding that "[t]his effect, however, is present in every case that requires special accommodations for adherents to particular religious practices." *Ward*, 1 F.3d at 878; *Shakur*, 514 F.3d at 886 (stating that "[i]n *Ward*, we discounted the favoritism argument). While "not irrelevant," this argument is "not in itself dispositive." *Ward*, 1 F.3d at 878; *see also Henderson*, 379 F.3d at 714 (under *Ward*, potential effect of favoritism not dispositive).

Defendant also argues that allowing Blake to have the CFM diet when it does not conform to his religious beliefs would "frustrate the orderly administration" of their attempt to accommodate religious diets while preventing inmates from requesting these diets out of preference. (ECF No. 100 at 4) (quoting *Resnick v. Adams*, 384 F.3d 763, 770 (9th Cir. 2003)). Defendant also posits that this would also result in many similar requests, which would require more resources because the CFM cost is "substantial." (*Id.* at 5.)

As to the first argument, the Court has already found that Defendants' denial of a vegan diet or the CFM as an alternative substantially burdened Blake's rights; it was thus not a mere "preference." As to the second argument, and more

importantly, "analysis of this factor requires factual evidence of the degree of any disruption and costs involved." *Parkerson v. Young*, No. 2:20-CV-00445-AR, 2022 WL 17820153, at *6 (D. Or. Dec. 20, 2022) (citing *Ward*, 1 F.3d at 878). In both *Ward* and *Shakur*, the Ninth Circuit found that this factor was inconclusive where defendants provided no evidence beyond conclusory statements that granting a prisoner's religious meal request would cause disruption. *Ward*, 1 F.3d at 878-79 (where district court made no findings about financial or administrative disruption, "we cannot simply accept the warden's assertion on appeal that the disruption would be significant"); *Shakur*, 514 F.3d at 887 (no evidence supported contention that other prisoners would demand the same treatment, and no evidence that defendant had looked into the cost of request).

Here, Defendant has provided no evidence of the administrative or financial impact of providing Blake with the CFM, nor have they provided evidence that granting Blake's request for CFM would actually result in many similar requests. The only citation Defendant makes is to NDOC AR 814.04, which sets forth the Kosher diet rules for the Common Fare Menu, arguing that these are "substantial." However, it does not appear that Defendants assessed the cost of providing one inmate—or even all Hindu Ahimsa practitioners at the prison (about which there is no evidence)—with CFM. Given this absence of evidence, this factor weighs in favor of Plaintiff. *See Phillips v. Mason*, No. CV-121131-PHX-DJH-MEA, 2014 WL 12769270, at *9 (D. Ariz. Sept. 25, 2014) (factor weighed in favor of plaintiff where there was no evidence that defendants looked into cost of providing plaintiff with requested meal or that other inmates would demand the same, and requested meal was already available at prison); *see also Lewis*, 2008 WL 1944112, at *23–24 (third factor weighed in favor of plaintiff where defendants failed to put forth any evidence to show that providing plaintiff with halal meals would result in more than a *de minimus* impact on prison).

//

### d. Alternatives

Under this factor, the Court looks to whether there are "ready alternatives to the prison's current policy that would accommodate [Blake] at de minimis cost to the prison." *Shakur*, 514 F.3d at 887 (quoting *Ward*, 1 F.3d at 879). The "existence of obvious, easy alternatives may be evidence that the regulation is not reasonable but is an 'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 90). In contrast, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," *Ward*, 1 F.3d at 879 (quoting *Washington v. Harper*, 494 U.S. 210, 225 (1990)).

Plaintiff asserts that even if a full vegan diet were not available, allowing him access to the CFM is a ready alternative because it is already provided to Jewish and Muslim inmates. Aside from asserting that the CFM better aligns with his Ahimsa beliefs, he also asserts that he can supplement his diet with additional protein sources, at his own expense, through the canteen or other prison programs. (ECF No. 59 at 30). Defendant argues that Plaintiff must put forth an alternative that "fully accommodates" his rights and has failed to do so because the CFM does not fully accommodate his religious beliefs. (ECF No. 100 at 4.)

In *Ward*, the Ninth Circuit posited that reasonable alternatives could include a diet that does not entirely comport with a religious law. 1 F.3d at 879. The court stated that even if full compliance would involve significant expense, "it may be possible to comply with the laws in substantial part at de minimis cost," such as "provid[ing] Ward with non-defiled foodstuffs, even if the dining area is not kept kosher." *Id.* The Ninth Circuit in *Shakur* also considered an alternative diet that did not fully comport with the plaintiff's requested Halal diet. 514 F.3d at 887. District courts in this circuit have done the same. *See Johnson v. Nevada ex rel. Bd. of Prison Comm'rs*, No. 3:11-CV-00487-HDM, 2013 WL 5428441, at *14 (D. Nev. July 10, 2013), *report and recommendation adopted*, No.

3:11-CV-00487-HDM, 2013 WL 5428423, at *25 (D. Nev. Sept. 26, 2013); *Lewis*, 2008 WL 1944112, at *16. The Court rejects Defendant's argument that Blake's proffered alternative is inadequate because it does not fully comply with his religious beliefs.

As discussed above, Defendant has not put forth evidence to show that providing Blake with the CFM meal would create more than a *de minimus* impact on the prison. There is accordingly a factual issue as to whether alternatives were available. *Lewis*, 2008 WL 1944112, at *25 (factual issue of alternatives existed where defendants put forth no evidence of impact on prison).

When considering all four *Turner* factors, the Court finds that there are genuine issues of material fact with respect to whether Defendant's burden on Blake's religious practice was reasonably related to a legitimate penological interest. This, as well as the issue of whether Thomas personally participated in deprivation of Blake's First Amendment rights, precludes summary judgment for either party on this claim.

## B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555

U.S. 223, 236 (2009). Under this analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (citation and internal quotation marks omitted). First, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* Courts exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam). "[A] court must define the right at issue with 'specificity' and 'not ... at a high level of generality.'" *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)). "A constitutional right is clearly established if every reasonable official would have understood that what he is doing violates that right at the time of his conduct." *Sampson*, 974 F.3d at 1018–19 (citation and internal quotation marks omitted).

To conclude that the right is clearly established, the court need not identify an identical prior action. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, "existing precedent must have placed the statutory or constitutional question beyond debate." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)). Although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties'

conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. *See Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds.") (citation omitted); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury . . .; only in the absence of material disputes is it a pure question of law.") (citations and internal quotation marks omitted).

Defendant argues that they are entitled to qualified immunity because (1) Thomas's actions did not violate the First Amendment, and (2) even if the actions did, the case law at the time did not clearly establish that the denial of CFM to Blake would violate the First Amendment. As to Defendant's first argument, the Court has already found that genuine disputes of material fact exist whether Thomas violated Blake's First Amendment free exercise rights. The Court thus moves to part two of the qualified immunity analysis, whether the right was clearly established.

"In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (quoting *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004)).

It is clearly established that inmates "have the right to be provided with food sufficient to sustain them in good health and that satisfies the dietary laws of their religion" *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). Additionally, there is clearly established law regarding the circumstance at issue—where a prisoner plaintiff requested and was denied a diet which was more

16

in line with his religious beliefs, even though the diet did not one hundred percent satisfy his religious tenants. In *Shakur*, decided in 2008, the plaintiff asserted that he required a Halal diet for his Muslim faith, but requested, as an alternative, that he be placed on the prison's kosher diet because it would be more in line with his beliefs than his current vegetarian diet. 514 F.3d at 885. The Ninth Circuit found that, given the plaintiff's sincere beliefs, "the prison's refusal to provide a kosher meat diet implicates the Free Exercise Clause." *Id.* This is sufficient to put Defendant on notice that denial of Blake's request for a diet that better conformed with his religious beliefs, if not related to a legitimate penological purpose, could violate the First Amendment. *Shakur* was also sufficient to put Defendant on notice that denial of an inmate's diet request in line with his sincere religious beliefs, even though the diet was "uncommon to the mainstream mandates of his religion," can violate the Free Exercise Clause. *Thomas v. Baca*, 827 F. App'x 777, 778 (9th Cir. 2020) (describing holding in *Shakur*).

Moreover, it was clearly established at the time in question that a defendant may not substantially burden an inmate's religious exercise without a legitimate governmental interest. *McElyea*, 833 F.2d at 197 (citing *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)); *Turner*, 482 U.S. at 89–91 (1987). Here, there are factual issues as whether there was a legitimate penological interest in denying Blake CFM. If, upon resolution of these factual issues, Defendant did not have a legitimate penological interest in denying Blake CFM, Defendant is not entitled to qualified immunity. "When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity. The issue can be raised in a [Federal Rule of Civil Procedure] Rule 50(a) motion at the close of evidence." *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (citing the Ninth Circuit's Model Civil Jury Instruction 9.34 (2017)).

Defendant makes several unpersuasive arguments as to qualified immunity which the Court will briefly address. First, Defendant argues that there is no authority that it is a free exercise violation where there is no "evidence that the official had any control over providing a religious diet contrary to the prison's regulations." (ECF No. 100 at 7.) However, here, the Ninth Circuit found that there is evidence from which a reasonable jury could conclude that Thomas had authority to grant Blake's request. This argument is thus inapplicable. Second, Defendant argues that no authority has found a violation of free exercise when an inmate admits the requested diet does not conform to his beliefs, or when the inmate failed to show that his current diet substantially burdened his religious beliefs. The Court has already found that Blake's religious beliefs were substantially burdened. Further, as discussed above, there is binding case law related to prisoner's requests for diets which do not fully conform to their religious beliefs as an alternative. *See Shakur*, 514 F.3d at 885. Finally, Defendant argues that Blake points to no authority finding a free exercise violation where the prison has a legitimate penological purpose for declining a religious diet request. As discussed above, there are factual issues as to whether Thomas had a legitimate penological purpose for denying Blake's request.

For these reasons, Defendant Thomas is not entitled to summary judgment on qualified immunity.

**C. Equal Protection Claim**

In his supplemental briefing on remand, Blake requests that the Court reconsider his claim under the Equal Protection Clause. The Court's prior order dismissed this claim as duplicative because, after it granted summary judgment as to claims against Thomas in his individual capacity, the equal protection claim remained only against Defendants in their official capacities, and thus it sought an identical form of injunctive relief as Plaintiff's RLUIPA claim. Now that the Ninth Circuit has held that there is an issue of fact as to Thomas's personal

participation, Blake asks the Court to reconsider dismissal of his equal protection claim.

However, the Ninth Circuit's memorandum was clear; Blake did not appeal the dismissal of his equal protection claim, rather, he "narrowly seeks review of the dismissal of the First Amendment claim against Thomas in his individual capacity." (ECF No. 93 at 3). As such, the Ninth Circuit's mandate was clear: it remanded this case only to address the issues raised in Blake's First Amendment claim. (*Id.* at 8.) "[A] district court is limited by this court's remand in situations where the scope of the remand is clear." *Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168 (9th Cir. 2006). Thus, this Court cannot consider Blake's equal protection claim.

## V.    Conclusion

It is therefore ordered that Plaintiff's Motion for Summary Judgment (ECF No. 59) is GRANTED IN PART and DENIED IN PART with respect to Plaintiff's Free Exercise Clause Claim. The Court grants summary judgment to Plaintiff as to the first two elements of his claim: that he has a sincerely held belief and that his rights were substantially burdened. Summary judgment is denied as to the third element.

It is further ordered that Defendant's Motion for Summary Judgment (ECF No. 60) and Supplemental Motion for Summary Judgment (ECF No. 100) are DENIED.

It is further ordered that Plaintiff's Motion to Strike (ECF No. 102) is DENIED.

Dated this 29th day of July 2025.


_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE